EDITH TENLEY NORTON, Appellee, *vs.* GEORGE H. CLARK
*et al.* Appellants.

*Opinion filed February 23, 1912—Rehearing denied April 3, 1912.*

1. WILLS—*what evidence is immaterial upon issue of undue influence.* In a suit to contest a will, where one of the grounds is undue influence by the chief beneficiary, evidence tending to show the relations of the chief beneficiary with the husband of the testatrix, or how he treated him, or whether he sought to obtain or did obtain property from him, is irrelevant and immaterial.

2. SAME—*right of contestant to prove conversations with testatrix.* The contestant is entitled to prove declarations of the testatrix, so far as they are relevant to the question of her mental capacity, although they occurred in conversations, and, necessarily, may prove so much of the conversations as will enable the jury to understand the declaration.

3. SAME—*when testimony as to what witness said to testatrix is properly excluded.* In a will contest case, where improper relations between the testatrix and the chief beneficiary are alleged in support of the charge of undue influence, it is proper to exclude a statement by a physician to the effect that when the testatrix told him her daughter was charging her with such improper conduct he said to her to pay no attention to it—that everybody knew it was false.

4. SAME—*general rule as to proving conversations.* Where one party proves a part of a conversation the other party has a right to all that was said at the same time concerning the same subject, since it may qualify or explain what has been testified to; and if a party proves what was said by the adverse party to the suit as evidence against him, such adverse party has a right to prove all that was said by him in the same conversation, provided, only, it relates to the subject matter of the suit.

5. SAME—*what testimony by physician is competent.* In a will contest case, where illicit relations between the testatrix and the chief beneficiary are alleged in support of a charge of undue influence, a physician who had attended the testatrix for a period of fifteen years and was familiar with her physical condition may testify that during all that period her condition was such as to render it very improbable, if not impossible, for her to have committed the acts alleged.

6. SAME—*when conversation between testatrix and attorney is not privileged.* The fact that a witness has transacted business

for the testatrix as her attorney does not preclude his testifying to her mental capacity, and if it is sought to prove by him anything concerning the testamentary disposition of her property, her conversation on that matter, if otherwise competent, should not be excluded as a privileged communication.

7. SAME—*instruction authorizing recovery if evidence preponderates slightly is not applicable to will contest case.* In ordinary cases, where a mere preponderance of the evidence is sufficient, it is not error to give an instruction authorizing a recovery if the evidence preponderates in favor of the plaintiff or complainant, although but slightly; but the rule is otherwise in a will contest case where mental incapacity is charged, as in such case there is the presumption of sanity, which the law raises in favor of every person and which cannot be disregarded.

8. SAME—*declarations of testatrix not admissible to show fraud or undue influence.* Declarations of the testatrix are not admissible to show that the will was executed under duress or undue influence or to show fraud, but they may be proved where they tend to show her mental condition at the time of the execution of the will, or so near to the time that the same state of affairs must have existed.

9. SAME—*when objection that instruction is based upon incompetent evidence cannot be urged.* If no objection is made to the introduction of incompetent evidence, it cannot be urged, on appeal, that an instruction was based upon the hypothesis of fact which such incompetent evidence tended to prove.

10. SAME—*instructions giving particular force to testimony of certain witnesses are improper.* Instructions are erroneous which call attention to particular witnesses or single out a fact and give it undue prominence and controlling effect in the case.

11. SAME—*effect of illicit relations between testatrix and chief beneficiary.* The existence of illicit relations between the testatrix and the chief beneficiary does not raise any presumption of undue influence unless other improper influence is shown to have been exerted to induce the making of the will, in which case the illicit relations may be considered, with the other facts, in determining whether the influence was undue.

APPEAL from the Circuit Court of Knox county; the Hon. GEORGE W. THOMPSON, Judge, presiding.

EDWARD J. KING, and WALTER C. FRANK, (FLETCHER CARNEY, of counsel,) for appellants.

CHIPERFIELD & CHIPERFIELD, CHARLES J. TRAINOR, MALCOLM G. JEFFRIES, and ADDISON J. BOUTELLE, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, Edith Tenley Norton, is the daughter and only heir-at-law of Sarah A. Tenley, who died at the age of fifty-nine years on October 23, 1909, under a surgical operation for the removal of a tumor, in the hospital at Galesburg. Three days before her death and in contemplation of the expected operation she executed her last will and testament, by which she bequeathed to appellee $500, to her nephew, Roy W. Burden, $10,000, to three friends $100 each and to another friend $200, and gave the remainder of her estate to her son-in-law, George H. Clark, who had been the husband of appellee but had been divorced from her. The will was admitted to probate, and appellee filed her bill in the circuit court of Knox county against the appellants, who were the legatees and devisee under the will, and the executor of the will, to set it aside, alleging that at the time of its execution the testatrix was not of sound mind and memory and that she executed it under undue influence exercised by George H. Clark. Aside from general charges of undue influence the specific fact alleged was, that the testatrix and Clark for many years had maintained illicit relations with each other, and that Clark threatened to expose such relations to the public unless the testatrix yielded to him and executed the will by bequeathing to him the greater part of her estate. Answers were filed denying the charges of mental incapacity and undue influence, and an issue was formed and submitted to a jury whether the writing was the will of the testatrix. The jury returned a verdict that the writing was not her will, and the court, after overruling a motion for

a new trial, entered a decree setting aside the will. From that decree an appeal was taken to this court.

Sarah A. Tenley was the wife and widow of James M. Tenley, a merchant at Farmington, Illinois. They had one daughter, the complainant, Edith Tenley Norton, who was married about the year 1887 to the defendant George H. Clark. From the time of the marriage the parties all lived together as one family, and in January, 1889, a child was born of the marriage. About 1893 the complainant went to a medical school at Keokuk, Iowa, and in the same year and about the time of the World's Fair she went to Chicago, where she has since resided. Her husband, the defendant Clark, was in the shoe business in Farmington and continued to live with the family. The child also lived there most of the time but was with his mother in Chicago awhile, and after returning to Farmington died on April 14, 1895. The complainant attended a medical school in Chicago and graduated in 1897, and since that time has practiced medicine in Chicago. She never returned to Farmington except as a visitor or temporarily. She obtained a divorce from Clark in 1902, and in 1904 was married to her present husband, Fay Norton. After the complainant left home the relations between her and her mother were always friendly except when Clark was involved. She was at enmity with him, and, at least after the divorce, she objected to his being at the home or having anything to do with the family, and when he was there she would not go there. Clark continued to live in the family until about 1895, when he sold out his shoe business and left Farmington. After that he was a commercial traveler or in business in Chicago, and in 1904 he was married again, and after that his residence was on a farm near Beloit, Wisconsin. He came to Farmington occasionally and stopped at the Tenley home, and was called for at different times and always responded by coming and rendering any service required. In October, 1907, James M. Tenley,

whose left side was paralyzed, was advised to go to California, and he insisted that Clark should go to Farmington and accompany him and the testatrix. Clark complied with the request, and while in California James M. Tenley died on December 27, 1907. The testatrix continued to live at Farmington until the fall of 1908, when she moved to Galesburg and resided there until her death. During the time that Clark lived in the Tenley family the testatrix had severe spells of sickness, one of them lasting eight or ten weeks, and Clark was accustomed to take care of her. He performed several disagreeable services which are usually performed by nurses of the same sex, and took turns with the doctor or others in sitting up nights or getting up during the night and performing these services, which usually fell upon him because of the difficulty of obtaining help for that purpose in Farmington, a place of about two thousand inhabitants. During these ministrations he was often in her room in his night clothes, and when she was not ill it was their custom to kiss each other when they met in the morning. They were accustomed to say "Good morning," and he always called her "mamma" and she called him "George" or "George, dear," and that was the time when they were in the habit of kissing each other. He usually spoke of her to others as "mamma." Under the will of James M. Tenley she received half of his estate and the complainant received the other half, each share being about $60,000. After the death of James M. Tenley, in December, 1907, the property was in the hands of the executor until the settlement of the estate. After the death of James M. Tenley the testatrix made eight or ten wills, in all of which Clark was the principal beneficiary. She died owning personal property amounting to $55,000 and real estate worth $4000. The will in question was executed on October 20, 1909, and two days before that she made a will giving $10,000 to the complainant, $5000 to Burden, $5000 in trust to the Burden children, and the balance to

Clark. On the same day that will was executed, Fay Norton, husband of complainant, notified Alfred C. Steenburg, executor of the will of James M. Tenley and banker of the testatrix, who had much to do with her business and who drew all her wills except the last two and is executor of the will now in question, that a bill would be filed by the complainant, Mrs. Norton, in the circuit court of Fulton county, on that day for the recovery of money from Clark alleged to have been given him by James M. Tenley; that there would be three days before the statements made in the bill would be made public and prompt action would have to be taken, and that the charges of the bill were very damaging to the character of the testatrix, mother of the complainant therein. Steenburg called up the testatrix by telephone and advised her of the information he had. On October 20, 1909, the testatrix made the will in question and told the witnesses that a short time had made a great change in her plans. For about fifteen years before her death she suffered from a fibroid tumor of the uterus, and of late it had grown to great size, so as to weigh from fifteen to twenty-five pounds, and it had progressed to a point where she could not live very long unless an operation was performed. The surgeon told her that she had one chance in a hundred to live through the operation, and she said she would take the chance. She died in the hospital immediately after the operation. Clark was not present when the will was drawn and had nothing to do with its preparation but asked the witnesses to attend and act as witnesses to the will. There was much ₁testimony about the relations of Clark with James M. Tenley, but those matters had no relevancy to the issue. The relations of Clark with James M. Tenley, or how he treated him, or whether he sought to obtain, or did obtain, property from him, were not material to the decision of the question whether he exercised undue influence over the testatrix.

At the conclusion of the evidence the defendants asked the court to direct a verdict in their favor on the ground that there was no evidence of mental incapacity or undue influence, which the court refused to do. On the question of mental capacity there were about twenty-five witnesses who had been well acquainted with the testatrix and had good opportunities to know her mental capacity, who testified that she was of sound mind and memory. About one-fifth as many, most all of whom had seen the testatrix for short periods of time in Chicago but who qualified to give an opinion, thought she was of unsound mind. Their opinions, however, were based on what she said and did during difficulties and controversies between her and her daughter about Clark, and had no relation to her ability to comprehend business affairs or manage her property. No fact was testified to which would show any want of mental capacity or inability to transact business or any deviation from the usual workings of a sane mind, but there were opinions of several witnesses that she was not of sound mind. Although a verdict for the complainant upon that issue would have been against the clear preponderance of the evidence and would not have been permitted to stand if the court had been authorized to weigh the evidence, there was sufficient testimony for the complainant to permit the jury to pass upon the question. The court was also justified in submitting to the jury the question of undue influence, and there was no error in refusing to direct a verdict.

The physician of the testatrix testified to a conversation with her in which she said that her daughter had charged her with conduct of which she was perfectly innocent, and he replied that he would pay no attention to it,—that everybody knew it was false. The court struck out his reply and did not err in that ruling, as it was not competent to get the opinion of the witness before the jury in that way. It is urged that a different rule was applied in the examination of witnesses for the complainant, and particularly

as to one witness who was permitted to state what she said in a conversation with the testatrix. In that case the remark of the witness was necessary to make intelligible what the testatrix said. The complainant was entitled to prove declarations of the testatrix so far as they were relevant to the question of her mental capacity although they occurred in conversations, and necessarily might prove so much of the conversation as would enable the jury to understand the declaration. The court, in ruling on the objection, said that the complainant was entitled to the whole conversation, and afterward, perhaps with that understanding, witnesses gave what they said expressing their opinions on the question at issue, and even told what the complainant said and that she advised her mother to give up her life of shame. When one party proves a part of a conversation, the other party has a right to all that was said at the same time, limited to the same subject, since it may qualify or explain what has been testified to. (*Black* v. *Wabash, St. Louis and Pacific Railway Co.* 111 Ill. 351.) Or if a party proves what was said by the adverse party to the suit as evidence against him, such adverse party has a right to prove all that was said by him in the same conversation, provided, only, it relate to the subject matter of the suit. (*Morris* v. *Jamieson,* 205 Ill. 87.) In this case the cross-examination did not come within either rule.

The court, on motion of the complainant, struck out the answer of the physician who had attended the testatrix for a period of fifteen years before her death and had made frequent examinations of her at various times, in which he gave it as his opinion that during all that period it would have been very painful for her, and almost impossible, to have committed any act such as she was charged with. The physician was qualified to give an opinion, and it was based upon physical examinations while attending her as her physician. He had stated quite fully the con-

ditions existing, and it was error to exclude his professional opinion.

The court also struck out the testimony of an attorney and refused to permit him to testify further because the matter was privileged. The attorney had transacted business with the testatrix and had not testified, and, so far as appears, did not propose to testify, to any privileged communication. He said he had met her probably half a dozen times and had conversations with her; that she said another attorney was getting ready to start a partition suit and asked about making parties, and that they also talked over general matters. There was nothing in his testimony about any matter involved in this suit, and apparently he was merely qualifying to give an opinion as to her mental condition, which would have been proper although he was her attorney. If it was intended to prove by him anything about the testamentary disposition of her property, it would not, if otherwise competent, be excluded as a privileged communication. (*Scott* v. *Harris,* 113 Ill. 447; *Wilkinson* v. *Service,* 249 id. 146.) The court erred in that ruling.

The court gave an unreasonable number of instructions, there being thirteen given at the request of the complainant and thirty-four given at the instance of the defendants, some of them of great length and in the aggregate stating about every conceivable question which could arise in a will contest, and most of them several times. It is impracticable to repeat any of them at length. The thirteenth given at the request of the complainant told the jury that if the evidence upon the question of mental capacity or undue influence preponderated in favor of the complainant, although but slightly, it would be sufficient for the jury to find in her favor. That kind of instruction was introduced into the practice in *Taylor* v. *Felsing,* 164 Ill. 331, which was an action on the case, where the court could not say that it was error to give it, and since the decision in that case it has become very common. It belongs to the same

class as instructions which assume that the evidence may be evenly balanced and that there may be nothing which inclines the mind to one side or the other, and both are the natural product of our system, created and enforced by statute, for advising the jury as to the law, under which instructions are not formulated in the judicial mind but are written by attorneys and advocates, whose every effort is to state the law as strongly as possible in behalf of their clients. In ordinary cases, where a mere preponderance of the evidence is sufficient, it cannot be said that it is error to give such an instruction, but a different rule has always been applied in testing the validity of a will. The law presumes every person to be of sound mind, and when a will has been executed with the formalities required by law, it has always been held that the evidence of incapacity must clearly preponderate to authorize the setting aside of the will. (*Carpenter* v. *Calvert,* 83 Ill. 62; *Wilbur* v. *Wilbur,* 129 id. 392; *Taylor* v. *Pegram,* 151 id. 106; *Craig* v. *Southard,* 162 id. 209; *Egbers* v. *Egbers,* 177 id. 82; *Entwistle* v. *Meikle,* 180 id. 9; *Wilkinson* v. *Service, supra.*) It was error to give the instruction that a slight preponderance of the evidence before the jury would justify a verdict against the will, regardless of the presumption of sanity.

The sixteenth instruction stated a correct rule of law, that it was necessary the testatrix, at the time of signing the will, should have been capable of knowing what her property was and who were the natural objects of her bounty, and be able to understand the natural consequences and the effect of the act of executing her will. It was not necessary that she should have had sufficient capacity to hold all those things in her mind at the same time, (*Carpenter* v. *Calvert, supra,*) but the absence of either element would render her incompetent. (*Dowie* v. *Sutton,* 227 Ill. 183.) That rule was applied to this case by instructing the jury that if the testatrix was not capable of knowing

who were the natural objects of her bounty they must find
against the will, and if they believed that she did not un-
derstand the nature and consequences of the execution of
the will, then in that case they must find against it,—and
there was no evidence tending to show either fact. The
rule that a testatrix must have been capable of knowing
who were the natural objects of her bounty is exceedingly
vague to the ordinary mind, but there was no evidence
tending in any degree to show that the testatrix did not
know that the complainant was her only heir-at-law and
the natural object of her bounty, or that she did not know
what her property was nor understand the natural conse-
quences and effect of executing her will. She gave the
complainant only a small bequest for reasons which were
entirely satisfactory to herself, whether they were such as
ought to have influenced her or not.

The nineteenth instruction told the jury that if the
testatrix, when she signed the writing, did not know its
contents because her mental condition was such that she
could not understand it, they should find against the will;
and the twenty-second made the same statement as to the
testatrix having sufficient mind and memory to remember
her property and relatives. There was no evidence upon
which to base either instruction.

The twentieth instruction related to capacity to compre-
hend a few simple details as contrasted with capacity to
remember many facts and details, and it had no application
to the case where there were no complicated details in the
will or with respect to the property.

The eighteenth instruction was unintelligible. It di-
rected the jury to find against the will although no undue
influence was used, if they believed from the evidence, con-
sidered with the presumption of sanity, if the jury believed
the complainant made out a *prima facie* case as defined in
the instruction at the time of making the will the mind of

the testatrix was impaired to the extent mentioned in the instruction.

The forty-fifth instruction advised the jury that if they believed, from the evidence, that during a considerable space of time prior to the making of the will illicit relations existed between the testatrix and Clark, and that he threatened if she discontinued such relations he would publicly declare them and thereby disgrace and degrade her, and that by reason thereof he obtained such a degree of control over her as to make her subservient to his will and thereby procured the making of the instrument, they should find it was not her will. It is urged that this instruction was based upon incompetent evidence; and that is true, since the only evidence of any threat on the part of Clark was incompetent. But the evidence was not objected to. A witness testified to statements of the testatrix corresponding with the hypothesis of fact in the instruction, and the daughter of that witness testified to the same statements. The declarations of a testator are not admissible as proof of the facts stated, and he cannot invalidate his will by declarations made either before or after its execution. They are not admissible to show that a will was executed under duress or undue influence or to show fraud, but they may be proved where they tend to show the mental condition of the testator at the time of the execution of the will or so near the time that the same state of affairs must have existed. (*Dickie* v. *Carter,* 42 Ill. 376; *Reynolds* v. *Adams,* 90 id. 134; *Massey* v. *Huntington,* 118 id. 80; *Bevelot* v. *Lestrade,* 153 id. 625; *Hill* v. *Bahrns,* 158 id. 314; *England* v. *Fawbush,* 204 id. 384.) The evidence of statements by the testatrix was not offered to show mental incapacity, and it would have had no tendency whatever to show any aberration of mind or mental unsoundness, and having no tendency to prove a want of mental capacity would not have been permissible for that purpose. If the testatrix made the statement, it was nothing but a narra-

tion of immoral acts and a threat of exposure on the part of Clark, and the evidence was offered, not to show mental incapacity, but for the purpose of proving the facts of illicit relations, threats of exposure and consequent fear. The complainant was grand commander of an order of women called True Kindred, and a witness who was appointed by her grand marshal of the order testified that the name of the testatrix was on the charter list; that the testatrix told her she had improper relations with her daughter's husband, Mr. Clark, and the witness said that under those circumstances she could not be a member of the order. The testatrix had applied for membership and the witness said she withdrew her application. The evidence was incompetent, but it was not objected to, and on cross-examination the fact was brought out that the organizer of the order went to Farmington and made an unfavorable report of the testatrix, which the witness presumed was based on her reputation at Farmington. None of this testimony was objected to, and complaint cannot now be made of giving the instruction based on the hypothesis of fact which the incompetent testimony tended to prove. The defendants could waive their objection to the testimony by not objecting to it, and if regarded as competent it had a tendency to prove the fact.

There is a serious objection, however, to the instruction. So far as the alleged threat and consequent fear were concerned, it was aimed directly at the testimony of the two witnesses, and, giving it a special force and effect, practically told the jury that if they believed that what the two witnesses said the testatrix told them was true they should find against the will. Instructions are erroneous which call attention to particular witnesses or single out a fact and give it undue prominence and controlling effect in the case. (*Hewett* v. *Johnson,* 72 Ill. 513; *Craig* v. *Miller,* 133 id. 300; *Wickes* v. *Walden,* 228 id. 56.) The existence of an illicit relation does not raise any presumption

of undue influence unless other improper influence is shown to have been exerted to induce the making of the will, such as the supposed threat, but it is a fact to be considered by the jury along with other facts in the case, provided there is proof, in addition to the fact of the unlawful relation, tending to show constraint or interference or undue influence. If there is proof that the beneficiary has exercised influence, the existence of an unlawful relation may be considered for the purpose of determining whether the influence was undue, but not otherwise. *Smith* v. *Henline,* 174 Ill. 184; *Snell* v. *Weldon,* 239 id. 279; *Dickie* v. *Carter, supra.*

For the errors pointed out the decree is reversed and the cause is remanded.          *Reversed and remanded.*