ELI F. JUDY *et al.* Appellants, *vs.* EDITH P. JUDY *et al.* Appellees.

*Opinion filed February 21, 1914.*

1. WILLS—*jury's verdict should stand unless manifestly against the weight of the evidence.* In a will contest case the verdict of the jury upon the question of testamentary capacity should not be overturned on appeal, where the testimony is conflicting and is of such a character that if the jury had accepted the view of either the witnesses for the contestants or the witnesses for the proponents a verdict in accordance with such view would have been well supported by evidence and not manifestly contrary to the preponderance thereof.

2. SAME—*competency of attesting witnesses refers to time of execution of the will.* The provision of the Statute of Wills requiring a will to be attested by two or more "credible" witnesses means competent witnesses, and the competency refers to the time of the execution of the will.

3. SAME—*when attorneys are competent as attesting witnesses.* The attorneys who drew the will are competent attesting witnesses notwithstanding they are subsequently employed by the testator's widow to do some work in the case and are to be given a larger fee if the will is sustained, and they are entitled, as against a general objection, to testify to the execution of the will, even though their testimony in the case on general matters might be incompetent as against a specific objection thereto.

4. SAME—*when widow may testify in rebuttal in a will contest case.* In a will contest case by heirs against the widow and other heirs the widow is competent, under paragraph 4 of section 2 of the Evidence act, to testify in rebuttal, denying statements testified to have been made by her in the presence of the witnesses testifying but not in the presence of her husband, the testator.

5. SAME—*instruction should not use expression "object or objects" of testator's bounty.* The objects of a testator's bounty are those who have some natural claim on his benevolence, affection or consideration, and hence an instruction upon the subject of the degree of mental capacity of the testator should use the word "objects" and not the expression "object or objects," although the use of such expression is not necessarily so misleading as to require a reversal.

6. SAME—*when inaccurate instructions will not reverse.* Instructions which conclude that a will is valid if the testator un-

derstood what he was doing, knew that he was making a will and how and to whom he was disposing of his property by such will, or, if the will was executed during a lucid period, the testator at the time knew the nature and extent of his property and the persons to whom he desired to give it, are inaccurate in not requiring that the testator know all the natural objects of his bounty; but such inaccuracy is not ground for reversal where the evidence shows that he did know all of the natural objects of his bounty, spoke of them and intentionally omitted them.

7. SAME—*question of propriety of attorneys being witnesses is not a rule of law to state to the jury.* The practice of attorneys being witnesses in the case is regarded as a professional impropriety, and the jury may be instructed that they may consider their interest in the case as attorneys in determining their credibility, but it is not proper to instruct the jury as to the professional propriety of their becoming witnesses.

8. SAME—*instructions singling out particular witnesses should not be given.* Instructions which single out particular witnesses and direct the jury specially as to considering their testimony should not be given.

APPEAL from the Circuit Court of Adams county; the Hon. HARRY HIGBEE, Judge, presiding.

HUBBARD, SCHMIEDESKAMP & GROVES, for appellants.

F. M. McCANN, and WILSON & WALL, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

Philip S. Judy, a resident of Wichita, in the State of Kansas, died in the Topeka State Hospital for the Insane on April 11, 1911. He left a widow, Edith P. Judy, but no child or descendant. He had executed a will on February 26, 1908, giving all his property to his wife, which will was admitted to probate by the probate court of Sedgwick county, Kansas. A certified copy of the will was recorded in Adams county, Illinois, where the testator owned a half section of land, and thereupon the appellants, who are a brother, a sister and the descendants of a deceased sister of the testator, filed a bill against his widow and other heirs

to contest the will, on the grounds of his mental incapacity and fraud and undue influence exerted on him by his wife, the sole devisee. The case was tried by a jury, a verdict was returned in favor of the will, a decree was rendered dismissing the bill, and the complainants have appealed.

It is insisted that the evidence clearly established the mental incapacity of the testator. He was about forty-two years old when he died, and he had lived all his life, until 1907, in or near the village of Paloma, Illinois, near which he owned a half section of land. In 1907 he conveyed 160 acres of this land to his wife, and they removed to Wichita, Kansas, where they resided from that time until his death. The will was executed in Wichita five or six months after he took up his residence there. He was adjudged insane in November, 1909, and committed to the State hospital at Topeka, where he remained until his death. In Illinois he had been a good business man, an extensive dealer in live stock, an active, sociable man, and had been a member of the board of supervisors of Adams county. About 1892 he contracted syphilis, with which he was afflicted for the rest of his life, and he was treated for it by various physicians until he left Illinois, in 1907. The physician who was treating him for some time before he went away testified that he was then suffering from paretic dementia and was mentally unsound. A petition seems to have been filed for the appointment of a conservator for him in Adams county in 1907, but there is no evidence that any trial was had upon it. He was suffering from paresis when he was adjudged insane.

The evidence was conflicting. Twenty or more witnesses testified that in their opinion the testator was of unsound mind, and testified to his acts and words on which they based their judgments. A smaller number testified that in their opinion the testator was of sound mind, and testified to his acts and words on which their opinions were based. If the jury accepted the view of either set of witnesses a

verdict in accordance with such view would have been well supported by evidence. The Illinois witnesses testified for the most part to eccentricities of conduct occurring prior to the testator's leaving Adams county, and their opinions refer to that time. The larger number of them expressed the opinion that the testator was not of sound mind. Whether the facts testified to justified such opinions, and whether, on the whole, the testimony of the greater number should outweigh that of the smaller number, were questions for the jury to determine. The Kansas witnesses were more equally divided as to numbers, and their testimony related to a later time than that of the Adams county witnesses and to a time nearer to the date of the execution of the will. Here, also, the opportunities of forming an opinion, the value of the opinion and the weight to be given to the testimony were questions for the jury. A review of the evidence in detail would not be convincing. It would only show that the evidence was conflicting. The rule in cases of this character is the same as in trials at law, that the verdict will not be disturbed unless manifestly against the weight of the evidence. That cannot be said of this verdict.

It is insisted that the court ought to have given the instruction asked by the contestants, at the close of the proponents' evidence, to find a verdict against the proponents, for the reason that the proponents had introduced no competent proof of the execution of the will. The contestants insist that the attesting witnesses were incompetent on the ground of interest, and since there was no other proof of the execution of the will the proponents failed to make a *prima facie* case. The attesting witnesses were Frederick B. Stanley and Claude C. Stanley, who were lawyers in the city of Wichita. They were partners and the will was written by Frederick B. Stanley in their office. After this suit was brought they were employed by Mrs. Judy, the widow, in the taking of the depositions of witnesses in Kansas and to assist in the case generally, their fees being agreed upon

at $125 absolutely and $125 more if Mrs. Judy was successful. It is argued that they were thus legally interested in the result of the suit to the extent of $125, and were therefore incompetent witnesses. If it be granted that they were legally interested in the event of the suit and were therefore incompetent witnesses, generally, in the case, they were not for that reason disqualified from testifying to the execution of the will. The Statute of Wills requires all wills to be attested by two or more credible witnesses, two of whom testifying to the statutory requirements in regard to the execution of the will shall be sufficient to admit it to probate. We have held that "credible" means competent; that the competency refers to the time of the execution of the will; and in the recent case of *In re Will of Delavergne*, 259 Ill. 589, that the acquisition of an interest in the estate subsequent to the execution of the will does not render a credible and competent attesting witness incompetent to testify as to its execution. The only objection made to the testimony of these witnesses was to their competency to testify in the case. They were competent to testify to the execution of the will, and the objection was therefore properly overruled. If any part of their testimony was incompetent that part should have been objected to specifically, but no such objection was made.

Objection was made to allowing the defendant Mrs. Judy to testify in rebuttal, denying statements testified to have been made by her in the presence of witnesses testifying but not in the presence of her husband. Paragraph 4 of section 2 of chapter 51 of the Revised Statutes expressly provides, that "where, in any such action, suit or proceeding, any witness, not a party to the record, or not a party in interest, or not an agent of such deceased person, shall, in behalf of any party to such action, suit or proceeding, testify to any conversation or admission by any adverse party or party in interest, occurring before the death and in the absence of such deceased person, such adverse party

or party in interest may also testify as to the same admission or conversation." The cases cited in which a widow was held incompetent to testify to facts which came to her knowledge by reason of the marriage relation are not in point.

The first instruction given to the jury was, that they should not be influenced, in making up their verdict, by any belief or feeling they might entertain, solely because they might think that the disposition made by Judy was not such as they would have made or which the jury might believe should have been made under the circumstances of the case. The objection is made to it that it does not allow the jury to take into consideration the reasonableness or unreasonableness of the disposition of the property. The instruction says, substantially, that the jury should not be influenced solely by what they may think as to the reasonableness of the disposition of the property, and the eighteenth given instruction supplies the part the omission of which is complained of in this instruction, by telling the jury they may take into consideration the reasonableness or unreasonableness of the bequests in determining the soundness of mind of the testator.

The second instruction, in describing the degree of mental capacity required of a testator, among other things contained the hypothesis that he knew the "object or objects of his bounty." The objection is made to this instruction that it is sufficient, under it, if the testator knew one object of his bounty, in this case his wife, regardless of the number of his relatives and heirs, to the exclusion of his relatives. The objects of his bounty whom a testator should have in his mind are those who have some natural claim upon his benevolence, affection or consideration. The expression "object or objects" is awkward and not accurate. It should not be used, but in this case is not so misleading as to require a reversal of the decree.

The hypothesis of the third instruction is, if "the said Philip S. Judy understood what he was doing, knew that he was making a will, and how and to whom he was disposing of his property by such will." The hypothesis of the fourth instruction is, if the will was executed during a lucid period, and if at the time "the said Philip S. Judy knew the nature and extent of his property and the persons to whom he desired to will it." The conclusion in each case is that a will executed under such circumstances would be valid. The objection made to these instructions is, that under them it would not be necessary for a testator to be able to know all the natural objects of his bounty but only those of them to whom he desired to give his property. The instructions are improper for this reason. The evidence shows that at the time the testator did remember and speak of his relatives and stated that he did not intend to give them anything because they were well fixed. The evidence shows that he had two illegitimate children whom he regarded with affection, and he did not at the time mention them. The instructions are inaccurate, but under the circumstances of this case the error in giving them is not sufficient to reverse the decree.

The fifth, sixth and seventh instructions are objected to, but they are upon the question of undue influence and no evidence of undue influence was offered. The instructions were therefore immaterial.

The twenty-fifth instruction as offered by the appellants told the jury that if they believe, from the evidence, "that any witness or witnesses testifying in this case are employed as attorneys in the case, and have been so employed since they knew that their evidence would be necessary, such employment *is improper and* should be taken into consideration by the jury in considering the weight of such evidence." The court gave the instruction but struck out the italicized words. Counsel for the appellants object to the modification. The impropriety was not in the employment

of the attorneys but in their becoming witnesses while the employment continued. This court has frequently condemned the practice of attorneys appearing as witnesses and attorneys in the same case. Such action is regarded as a professional impropriety, but the fact that it is so is not a rule of law to be given to the jury. The witnesses were competent, and it was proper to instruct the jury that their interest in the case as attorneys might be considered in determining their credibility, but it would not have been proper to instruct the jury as to the professional propriety of their becoming witnesses.

The twenty-sixth instruction asked by the appellants told the jury "that while attorneys employed in this will contest have been permitted to state their opinions on the question of sanity or insanity of the testator at the time of making the alleged will, the same as any other lay witnesses, the weight and sufficiency of such evidence is a question for the jury under all the facts and circumstances proven in the case, *and the jury is not compelled to believe such evidence because it is the only evidence at that particular time, and the jury should not do so if you are satisfied, from other facts and circumstances in evidence, that such evidence is untrue or unreliable."* The court struck out the portion in italics. The whole instruction should have been refused. The employment referred to here is the employment of Frederick B. Stanley to write the will. The instruction singles out particular witnesses and instructs the jury specially as to them. The error was not in modifying the instruction but in giving it at all. The appellants, however, cannot complain of this error.

We find no error for which the decree should be reversed, and it is affirmed.                    *Decree affirmed.*