(No. 21083.

PETER KALNIS *et al.* Appellants, *vs.* EDWARD WAITEK, Exr., *et al.* Appellees.

*Opinion filed February 19, 1932.*

HERMANN P. HAASE, for appellants.

JOHN A. IRRMANN, JOHN T. ZURIS, and EARL J. WALKER, for appellees.

Mr. JUSTICE ORR delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook county where a jury trial sustained the contention of the appellees, who were the proponents, that a certain instrument executed on December 13, 1929, by Veronika Zversdinas, was, in fact, her last will and testament. The sole issue presented to the jury was whether the instrument dated December 13, 1929, was the last will and testament of Veronika Zversdinas. Numerous assignments of error made by appellants, who were contestants in the court below, can all be reduced to two questions: (1) Was the verdict of the jury against the manifest weight of the evidence? (2) Were harmful errors of procedure allowed to occur in the trial court, to the disadvantage of the appellants? No question of fraud, testamentary capacity, undue influence or duress is involved.

Veronika Zversdinas, an aged Lithuanian woman of Chicago, died in January 1930, leaving a sister in Lithuania as her sole heir-at-law. An instrument purporting to have been executed by her on December 13, 1929, was probated and admitted to record as her will by the probate court of Cook county. By this will she did not leave any of her estate to either of the appellants, although by a former will she had left them her entire estate. By the terms of the admitted will $2000 was left to John Eudeikis, an undertaker, to pay her burial expenses, $300 to a nephew, Anton Balvocius, and the remainder of the estate, real and personal, was left to Mary Garpstas, a cousin of testatrix.

Edward Waitek, an employee of undertaker Eudeikis, was requested by Mary Garpstas to call upon the testatrix, as she wanted to see him. He went at once with Mrs. Garpstas to the residence of the testatrix, who told him

that she wanted to make a new will and wanted his assistance. She told him how she wanted the will made, and Waitek made notes of her instructions, telling her that he would return the following Friday with the will for her to sign. On the following Friday, December 13, 1929, he appeared at her home with two men, Joseph Sakalauski and Gregory Burba, the first named being requested by the testatrix to act as a witness. Others present at this time were Mrs. Garpstas, her husband and son. All gathered in the dining room around a table and Waitek read the will to the testatrix in English, which she could understand. He then explained the instrument to her in her native tongue, Lithuanian. The testatrix expressed her complete satisfaction with the will and affixed her mark to the instrument, and Waitek, Sakalauski, Burba and Garpstas signed the will as witnesses. Waitek said the testatrix was up and around and not in bed when he was there and that she signed the will at the table at about five o'clock in the afternoon. Waitek's testimony concerning the execution of the will was substantiated by the testimony of two who signed as witnesses. These witnesses, so far as the record shows, were not interested in the outcome of the suit. Other witnesses testified that the testatrix had told them she intended to execute, or had executed, the admitted will. All of these witnesses were people who had known the testatrix for years, several living or having a business near her home. Mrs. Mikshys said that her neighbor was up and around almost until her death, and that on December 13, 1929, at about four P. M., the testatrix had told her that she was going to make a new will that evening. Anton Mikshys related that several days after December 13 the testatrix told him she had made a new will and was now satisfied. Petrovella Yuravich had known the testatrix for six years and had worked at her home. She last saw her on December 23, and on that occasion was told by her, "I no good feel; I got an operation after Easter; I all

ready; I make the paper for this cousin;" further, that she referred to her nephew, Anton Balvocius, at this time, saying: "My sister's son I no like it; too much drink; he no listen."

To offset this array of evidence, Gregory Burba, a witness to the will, was called upon to testify, but he denied that he had ever told an undertaker named Mazeika, after the death of the testatrix, that he had not signed as a witness to the will. Walter Jonush said that he went to the home of the testatrix on December 13, 1929, at about one o'clock in the afternoon, and remained there until seven o'clock that evening. He said the only other persons present were an old man and a woman named Justine, who was cleaning; that Mary Garpstas was not there that day while he was there, and further, that the testatrix was in bed and did not sign any papers that day in the dining room. He said that no man came to the house that day while he was there, nor did Mrs. Mikshys. Isidore Kazlawskis, who had worked for the testatrix for some time and made his home with her, supported the story of Jonush, although he does say that Mary Garpstas was at the house on the day in question about four times and that Justine Kreivis was there doing work. Kazlawskis said that he did not leave the house that day until late that evening; that Waitek was not at the house nor did three men come to see the testatrix after four o'clock that day. He believed that Jonush was there on the 13th and that Justine was also there that day. Justine Kreivis said that only Kazlawskis and Jonush were at the home of the testatrix on the 13th; that she was there working all that day, and that Mrs. Garpstas was not at the house. This was all the evidence introduced by contestants bearing upon the sole point at issue.

The proponents seriously impeached the credibility of the witness Kazlawskis by showing that he was being partially supported by the contestant Kalnis, and that Kazlawskis had taken $100 from under the pillow of Mrs.

Zversdinas on her deathbed and by agreement with Kalnis had kept the money. Justine Kreivis said that she did not know the man called Walter Jonush other than as Walter, although he said she was his former wife.

An examination of the record convinces us that the verdict of the jury was in accord with and not contrary to the evidence.

This court has said that it will not set aside the verdict of a jury in a contested will case upon conflicting evidence unless the verdict is clearly against the manifest weight of the evidence. (*Bevelot* v. *Lestrade,* 153 Ill. 625.) Mary Garpstas was one of the natural objects of the testatrix's bounty, being related to her and having some hold on her affections. Neither of the contestants was related to the testatrix and in her judgment did not merit testamentary gifts. The character of the testimony for the proponents was of a much higher order than that offered by the contestants, this largely because it came from those who were not personally interested in the outcome of the suit and had no alliances or connections with the contending parties. The task of determining the credibility of the witnesses and harmonizing the evidence is a task for the jury and not for this court, (*Hauptman* v. *Graehl,* 343 Ill. 128,) and we can find no fault with the result of the jury's deliberations in the present case.

The contestants aver that the trial court committed error in preventing them from offering in evidence testimony to show that Mary Garpstas endeavored to, and did, fraudulently procure the making of the instrument of December 13, 1929. In rejecting this offer of proof the trial court committed no error, for there was no allegation in the bill of complaint which related to the subject matter of the offered testimony. *Huffman* v. *Graves,* 245 Ill. 440; *Waters* v. *Waters,* 222 id. 26.

Complaint is also made of the refusal to admit in evidence the remarks by the testatrix subsequent to the exe-

cution of the will which would tend to vary the operation of the will. It was likewise proper to refuse the contestants the opportunity to present those matters to the jury. *Waters* v. *Waters, supra; Prinz* v. *Schmidt,* 334 Ill. 576.

The failure of the contestants to take an order of default against one of the defendants who failed to answer cannot now be availed of by them to set aside the decree. Such error is not available to appellants. *Pyle* v. *Pyle,* 158 Ill. 289.

The decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*