(No. 31535.—

FRANK HOCKERSMITH, Conservator, Appellee, *vs.* NOEL C. Cox, Appellant.

*Opinion filed November 27, 1950.*

ELMER A. TAYLOR, and PALLISSARD, FLEMING & ORAM, both of Watseka, for appellant.

THOMASON & CARLSON, of Onarga, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Frank Hockersmith, as conservator of the estate of Floyd Skeels, incompetent, filed suit in the circuit court of Iroquois County, contesting the will of Augusta Skeels, deceased, making Noel C. Cox, individually and as executor of the last will and testament of Augusta Skeels, the defendant.

Augusta Skeels, at the age of eighty years, died March 1, 1949, leaving a purported last will, dated November 13, 1948. She left as her only heir-at-law, Floyd Skeels, who was an inmate of the Elgin State Hospital at Elgin, Illinois. She owned real estate valued at approximately $22,000, and personal estate of approximately $4000, the real estate consisting of a forty-acre tract and another tract of thirty-two acres, located in Iroquois County. By her will she gave the forty acres to her son and the defendant, Noel C. Cox, in equal shares, gave to her son the thirty-two acres, and gave to Cox all of her personal property. She further provided in the will that Cox should manage and control her son's share of the estate until such time as his conservator is discharged and the son restored to competency, when the net income, after deducting expenses and fees, should be paid to the son, and that if the son should not

be restored to competency, any amount so accumulated and not needed for his support was to become the absolute property of Cox. Cox was also appointed executor without bond and no provision was made requiring any security from him as manager and trustee.

The complaint, as amended, and the answer as filed thereto, presented the question of undue influence and as to whether or not Augusta Skeels, at the time of executing the said instrument in writing, purporting to be her last will and testament, was of sound mind and memory, with the physical or mental capacity, power 'or ability to make a will.

The issues in the case were tried before a jury and a verdict was returned that the instrument in question was not the will of Augusta Skeels. At the conclusion of plaintiff's evidence, and again at the close of all the evidence, the defendant moved the court to withdraw from the jury the charge of undue influence. These motions were denied. Defendant filed a motion to tax the costs of the suit and a reasonable attorney fee against the estate and also filed a motion for a new trial. The court denied these motions and entered a decree upon the verdict setting aside the alleged will and taxing the costs of the suit against the defendant individually. The defendant has appealed to this court, assigning as errors the refusal of the trial court to withdraw from the jury the issue of undue influence, the insufficiency of the evidence to support the verdict, the admission of improper evidence, the giving of instructions on behalf of the plaintiff, the modifying of an instruction given on behalf of the defendant, refusing to allow defendant his reasonable attorney's fees and costs and taxing the costs against defendant.

As to the first contention pertaining to undue influence, the record does not disclose that the defendant participated to any extent in the making of the will, although Perry Price, a witness to the will, testified that the defendant

asked him to go to the farm home of decedent and that after he arrived there he witnessed the will. Price also testified he could not positively state the defendant, Cox, was not actually present in the room when the will was executed. The fact, also, that defendant had, prior to November, 1948, written to decedent's son in regard to the employment of an attorney for the son, which, it is contended by the contestant, creates a reasonable inference that the defendant was ingratiating himself with the decedent for the purpose of obtaining a substantial portion of her property, is only a circumstance, which would not prove undue influence. A number of circumstances are pointed out and it is contended by the contestant that considered together they constitute strong circumstantial evidence of the procurement of the execution of said will through the exercise of undue influence by the defendant, and this, in connection with the fact that the decedent was old, feeble and in poor health, and according to medical testimony in the case, suffering from senile dementia, which plaintiff claims would cause her to be easily influenced, are facts and circumstances tending to show undue influence.

Undue influence which will avoid a will must be directly connected with the execution of the will itself, must operate when the will is made, must be directed toward the procuring of the will in favor of a particular person, and be such as to destroy the freedom of the testator's action, thereby making the instrument more the result of the will and intent of another than that of the testator himself. (*Mosher* v. *Thrush,* 402 Ill. 353; *DeMarco* v. *McGill,* 402 Ill. 46; *Biggerstaff* v. *Wicks,* 348 Ill. 129; *Prinz* v. *Schmidt,* 334 Ill. 576; *Gregory* v. *Richey,* 307 Ill. 219.) No inference of undue influence arises from decedent's age and physical and mental condition or from the fact that defendant communicated with her son in regard to an attorney for the son. Undue influence cannot be established merely by inference, though circumstances may tend

to do so. (*Knudson* v. *Knudson,* 382 Ill. 492.) Nor can undue influence be inferred from the provisions of the will in defendant's favor, inasmuch as a testator may distribute his estate as he pleases, and may, if he so desires, give it entirely to strangers. The trial court should have withdrawn from the jury the issue of undue influence.

In cases contesting the validity of a will where both testamentary incapacity and undue influence are charged, the refusal of the court to withdraw from the jury one of the charges, not supported by the evidence, will not cause a reversal if such error could not have affected the result of the suit. (*DeMarco* v. *McGill,* 402 Ill. 46; *Challiner* v. *Smith,* 396 Ill. 106; *Buerger* v. *Buerger,* 317 Ill. 401.) But, if the evidence in support of such issue, although not sufficient to warrant submitting the issue to the jury, is of a character to appeal to the prejudice, passion or sympathy of the jury, and the evidence to support the other issue, although such that the issue is properly submitted to the jury, is in itself of an inconclusive character, then it is error to submit the first-mentioned issue to the jury, and a decree in favor of the contestant entered upon the verdict of the jury must be reversed. (*DeMarco* v. *McGill,* 402 Ill. 46; *Challiner* v. *Smith,* 396 Ill. 106.) This for the reason that when the evidence is of the character above mentioned, the action of the court in submitting both issues could mislead the jury and might reasonably affect the verdict.

In the case of *Holland* v. *People's Bank,* 303 Ill. 381, the court denied a motion to withdraw the question of undue influence and it was claimed this was reversible error. There, as in this case, no specific finding was made by the jury on the question of undue influence, but the finding was that the instrument was not the last will and testament of the testator. We there held that where a will is contested on the ground of mental incapacity and undue influence, the denial of a motion to withdraw the issue of undue

influence is not prejudicial error even if there is no evidence to sustain that charge, where the finding that the will was not the last will and testament of the testator is supported by testimony that he was not of sound mind.

We have heretofore pointed out the evidence offered in support of undue influence, and, while it was insufficient to support a verdict on that issue, we are of the opinion it is not of such a character to appeal to the prejudice, passion or sympathy of the jury to warrant holding it reversible error, especially if the evidence on the other question submitted of mental incapacity is not of itself of an inconclusive character.

Ten witnesses testified for the plaintiff on the question of mental incapacity. Doctor Buckner, who had been acquainted with decedent for twenty-five years and during most of that time was her family physician, testified that in June, 1948, she was suffering from a gradual progressive mind enfeeblement, the medical term for which is senile dementia; that she had motivated crying spells, periodic delusions of persecution, fits of anger and stated that he had an opinion with reasonable certainty that Mrs. Skeels, in June, 1948, at the time she was in the hospital, was of unsound mind. Dr. Christy, who treated decedent while she was in the Champaign hospital in June, 1948, testified she had advanced arteriosclerosis, with cerebral arteriosclerosis and mental confusion; that cerebral arteriosclerosis is hardening of the arteries of the brain. He stated that in his opinion decedent was of unsound mind.

Another physician, Dr. Parkhill, who attended her while in a nursing home in Pontiac, testified that while she was there she imagined there were iron bars on the window and she was confined in prison, and complained of people being in the room who were not there; that she was a patient of his from December 29, 1948, to March 1, 1949, the date of her death; that during this period he called on her two or three times a week on the average; that she

complained of somebody after her. He further testified that, based upon his observation, the decedent was afflicted with this mental illness to the extent that she had these insane delusions and that they existed a year, possibly two years. The operator of the nursing home and a nurse employee there, both of whom had daily contact with the decedent while she was a patient there, testified she was irrational and unmanageable; that she believed her food and medicine were poisoned and that people were in the room to harm her. One expressed an opinion that she was not sound mentally.

Maude Brown, a neighbor, who visited the decedent in the month of June, 1948, testified she told her the neighbors had brought her food, but she did not eat it because she was afraid they would poison her. Another neighbor testified he visited her at frequent intervals during the summer and fall of 1948, and she told him people were trying to get rid of her and that she would go on about her son being wrongfully committed to an institution.

From this evidence in support of the issue of mental incapacity, we do not see how it can be said it is, in itself, of an inconclusive character.

The defendant produced a number of witnesses who testified as to decedent's mental capacity. They included the lawyer who drew up the will, the witnesses who signed it, the president of the bank where she transacted her banking business and the assistant cashier of the bank. All of these witnesses expressed an opinion that she was of sound mind and memory.

One witness testified that he tried to buy her cow in August, 1948, and tried to drive a hard bargain with her, but that she was too smart for him and he did not make the purchase. With this evidence tendered, the cause was submitted to the jury.

In contested will cases arising under our statute, the verdict of the jury is to have the same force and effect as

is given to a verdict in a case at law under a like state of facts, and when the verdict in such cases is not manifestly against the weight of the evidence, the court is bound by it in the same manner and to the same extent as if it were a case at law. (*Tidholm* v. *Tidholm,* 391 Ill. 19; *Hunt* v. *Vermilion County Children's Home,* 381 Ill. 29; *Voodry* v. *Trustees of University of Illinois,* 251 Ill. 48.) Considering the entire evidence on both sides, we are of the opinion the decree of the circuit court is not manifestly against the weight of the evidence and cannot be reversed on that ground. *Holland* v. *People's Bank,* 303 Ill. 381; *Judy* v. *Judy,* 261 Ill. 470; *Kellan* v. *Kellan,* 258 Ill. 256.

It is also urged that the witness, Shirley Snyder, who was the granddaughter of decedent, was incompetent under section 2 of the Evidence Act and that error was committed by the court in permitting her to testify. This witness was not a party to the suit and could neither gain nor lose as the direct result of the suit. She was therefore not "directly interested in the event thereof" and was not within the prohibition of the statute. The test of interest which determines the competency of a witness in a will contest is whether he will gain or lose as the direct result of the suit, and the interest must be direct and immediate. *Brownlie* v. *Brownlie,* 351 Ill. 72; *Wetzel* v. *Firebaugh,* 251 Ill. 190.

Defendant complains that the court admitted other incompetent testimony, but the only mention of the same made in his argument is as follows: "At pages 36 to 44 and 48 to 52 and 90 to 93 of the abstract appear a number of objections on the part of the defendant to evidence, which the court overruled. Said objections should have been sustained, and in support thereof we submit the authorities appearing under Part VII of Points and Authorities of this Brief." This division of the "Points and Authorities" is entitled "Objections to Evidence" and sets out eleven propositions of law and the authorities relied upon to support them. Nowhere in his brief and argument does de-

fendant attempt to discuss or apply these authorities or to show wherein the evidence objected to was prejudicial to him. The objections appearing on the designated pages of the abstract were numerous and the argument should have specifically pointed out wherein the court erroneously ruled thereon. However, upon an examination of the abstract, we are convinced that if any error occurred, it was not such as would warrant a reversal of the decree.

There is a further question raised as to whether the court erred in instructing the jury. It is to be noted in this regard that the record contains twenty-nine instructions which were given to the jury. Eighteen instructions were given to the jury on behalf of the plaintiff, and defendant attacks all of them, except Nos. 4, 6 and 17, as erroneous. The objection to No. 1 is that it is not based on any evidence in the record. It is unnecessary to enter into a detailed discussion of the various criticisms made of this instruction. It is sufficient to say that it announced correct principles of law which were applicable to the case, upon the state of the evidence contained in the record, and by which principles the jury should be governed in determining the issue of testamentary capacity. The jury could have been in no way misled by the giving of this instruction.

Instructions Nos. 2, 3 and 16 are objected to on the ground that they deal with the question of undue influence and that such question should not have been submitted to the jury. This point is not well taken, because, as heretofore pointed out, the evidence upon undue influence was not of a character which could mislead the jury or influence the verdict, and therefore these instructions on the question of undue influence could not have been prejudicial to the defendant. This is especially true in view of defendant's given instruction 6. The jury could not, under the evidence in the record, and following the guidance of these instructions of plaintiff and defendant on the question of undue influence, have returned a verdict for the plain-

tiff on that issue. Hence, the defendant was not injured thereby.

Plaintiff's instruction 5 told the jury that "any impairment of the mental faculties which destroys mental capacity as defined in these instructions disqualifies a person from making a will even though it has not reached a state of absolute imbecility." The objection made to this instruction is that it told the jury that "any impairment of the mental faculties" was sufficient to warrant setting aside the will, and it is said that the jury, under this instruction, undoubtedly considered that the testimony in regard to decedent suffering from senile dementia warranted setting aside the will. This criticism is not well taken in view of the language in the instruction restricting its applicability to any impairment of the mental faculties which destroys mental capacity "as defined in these instructions," and in view of the further fact that the jury was instructed by defendant's given instructions 3 and 4 as to mental capacity which was sufficient to enable the decedent to execute a valid will. A similar instruction in *Dillman* v. *McDanel,* 222 Ill. 276, was held not subject to a similar objection.

Plaintiff's instructions 7 and 8 are instructions relating to the "natural objects of the bounty" of decedent. No. 7 told the jury that the natural objects of a testator's bounty are those who have some natural claim upon his benevolence, affection or consideration. No. 8 stated that the natural objects of the bounty of a person making a will are not necessarily confined to her legal heirs but may be those, who by reason of kinship may reasonably be supposed to have some claim on her. Defendant contends that the natural objects of a testator's bounty are only those persons who are his heirs-at-law and bases his objection to plaintiff's instructions 7 and 8 on that ground. This court, in the case of *Judy* v. *Judy,* 261 Ill. 470, at page 475 of the opinion, stated that the objects of his bounty whom a testator should have in his mind are those who have some

natural claim upon his benevolence, affection or consideration. In *Kalnis* v. *Waitek,* 347 Ill. 253, it was stated, on page 257 of the opinion, that one Mary Garpstas, (who was one of the beneficiaries under the testatrix's will, but was not an heir) was "one of the natural objects of the testatrix's bounty, being related to her and having some hold on her affections." Also, in the case of *Hutchinson* v. *Hutchinson,* 250 Ill. 170, at page 180, this court stated that although the children of the testator were natural objects of his bounty, they were not the only natural objects thereof, and that the testator's brothers were also natural objects of his bounty. The objection to these instructions is without merit.

Plaintiff's instructions 9, 10 and 14 are instructions relating to insane delusions. It is claimed that the record contained no evidence of insane delusions, and therefore these instructions should not have been given. It was a controverted question of fact as to whether or not decedent was the victim of insane delusions which influenced her in making her will, and it cannot be said that there was no evidence to which these instructions were applicable. No. 10 is further criticised because it tells the jury that the testatrix might be capable of transacting ordinary business and yet incapable of making a valid will. A substantially similar instruction has been approved by this court in *Anlicker* v. *Brethorst,* 329 Ill. 11, at pp 18-19; *Kimber* v. *Kimber,* 317 Ill. 561, at p. 575; *Catt* v. *Robins,* 305 Ill. 76; *Dowie* v. *Sutton,* 227 Ill. 183, and *American Bible Society* v. *Price,* 115 Ill. 623, which were cases where, as here, there was evidence tending to show insane delusions which influenced the testator in making his will.

It is also insisted that instruction No. 14 is erroneous in that it tells the jury that no matter how logically the testatrix conducts herself upon the assumption of supposed facts, she is under an insane delusion. It is argued that by this instruction the testatrix is deprived of the benefit

of the misapprehension of facts contemplated in *Jackman v. North,* 398 Ill. 90. This objection ignores the fact that the "supposed facts" mentioned in the instruction are expressly designated as "supposed facts which have no existence except in his perverted imagination and which are against all evidence and probability." This instruction does not run counter to *Jackman v. North,* but is in full harmony with the rules laid down in that case as to insane delusions. A misapprehension of facts which does not amount in law to an insane delusion is distinguished from an insane delusion in that the former is a belief in the existence or non-existence of certain supposed facts which is based on some evidence, however slight, and not, as defined in the instruction, a belief in supposed facts which is against all evidence.

The eleventh instruction given on behalf of plaintiff told the jury that although inequality in the distribution of the property of testatrix was not of itself conclusive evidence of the unsoundness of mind and memory required by law, it might be considered as a circumstance, together with all the other facts and circumstances in evidence, tending to establish unsoundness of mind. The twelfth instruction advised the jury that all the surrounding facts, including the bequests themselves, their propriety or impropriety, their reasonableness or unreasonableness, in view of the situation, relations and circumstances of the testatrix in evidence might properly be considered by the jury in determining whether the testatrix was at the time of the execution of the alleged will of sound mind and memory. The objection is made, which is common to both these instructions, that they in effect tell the jurors that when a testator deviates from the laws of descent and gives some of his property to a stranger, they may consider this as proof of unsoundness of mind. In *Turnbull v. Butterfield,* 304 Ill. 454, and *Donnan v. Donnan,* 236 Ill. 341, cited by defendant, the giving of a similar instruction was held to be error for the reason that such instruction,

standing alone, was calculated to give the jury the impression that the fact, alone, of inequality in the distribution of property is to be considered as evidence tending to show unsoundness of mind. However, in the instant case, the eighth instruction given for defendant was as follows: "The court further instructs you that you have no right to take into consideration the reasonableness of the will of Augusta Skeels for the purpose of deciding whether or not to avoid the same. You have a right to consider the reasonableness of the will and the terms and conditions thereof in consideration with all the other evidence in determining whether or not the testator was of sound mind and memory at the time she made the will." This instruction 8 was sufficient to cure any wrong impression which might be given by plaintiff's instructions 11 and 12, and to bring this case in harmony with the rule announced in the cases above cited, which are relied on by defendant. *Catt* v. *Robins*, 305 Ill. 76.

It is objected that instruction 13 given for plaintiff was erroneous in referring to an insane delusion as a false or fictitious belief which a rational person under the same circumstances would not have had. Counsel argue that the test is what no rational person under the same circumstances would have believed, and not what some rational person would have believed under such circumstances. While this instruction is inaptly worded, and it would have perhaps been more accurate to have used the words "no rational person," we are of the opinion the jury could not have been misled by such wording of the instruction.

The fifteenth instruction given at the request of plaintiff is identical with an instruction approved by this court in *Down* v. *Comstock*, 318 Ill. 445, being appellant's sixteenth instruction in that case.

The objection to plaintiff's instruction 18 is that it told the jury that plaintiff was required to prove his case by a preponderance or greater weight of the evidence. It is

claimed that the instruction should have required the evidence to clearly preponderate to authorize setting aside the will, and *Norton* v. *Clark,* 253 Ill. 557, is cited in support of the attack on this instruction. In the case cited, the instruction stated that if the evidence preponderated in favor of complainant, although but slightly, it would be sufficient for the jury to find in her favor. This court held it was error to give the instruction that a slight preponderance of the evidence would justify a verdict against the will, saying, on page 566 of the opinion, that "it has always been held that the evidence of incapacity must clearly preponderate to authorize the setting aside of the will." In the later case of *Brainard* v. *Brainard,* 259 Ill. 613, an instruction was objected to as erroneous in telling the jury that it might find, from a preponderance of the evidence, that the testator was of unsound mind, and *Norton* v. *Clark,* 253 Ill. 557, was there relied on in support of the objection. But this court, in the *Brainard case,* held the instruction correctly stated the law in this particular and did not fall within the rule announced in *Norton* v. *Clark,* as the objectionable feature of the instruction in the *Norton case* was the use of the words "although but slightly." Furthermore, in the instant case the jury was told by defendant's instruction No. 1 that the evidence must preponderate in favor of unsoundness of mind; by his instruction No. 2 that the burden is on the plaintiff to prove by a preponderance of the evidence that the testator was mentally incapable of making a will; and by his instruction No. 5 that the burden of proving lack of testamentary capacity is on the plaintiff, not only to overcome by a preponderance of the evidence the testimony of the subscribing witnesses to the will, but to prove by a preponderance of the evidence that the testator was mentally incapable of making a will. A party cannot complain of an erroneous instruction where his own instruction is subject to the same criticism. *People* v. *Rudnicki,* 394 Ill. 351.

Defendant insists that his refused third instruction should have been given and also complains of the modification of his ninth given instruction. Refused instruction No. 3 was covered by defendant's given instruction No. 7. Repetition in the giving of instructions is unnecessary, and there was no error in refusing to give the proposed instruction. *People* v. *Rife,* 382 Ill. 588.

It is contended there was no evidence on which to base plaintiff's instruction No. 9 as given to the jury. We do not regard the giving of this instruction as of sufficient importance to cause a reversal of the decree. Considering the instructions as a series, they as a whole, fully, fairly and correctly instructed the jury as to the law of the case, with the single exception of the instruction last mentioned; and this instruction, when considered in connection with the other instructions given in the case, was not such as would prejudicially influence the jury against the defendant. Even in criminal cases errors committed by the trial court will not reverse unless the errors are such as deny to the defendant his substantial rights or materially prejudice his case before the jury, and, as pointed out in *People* v. *Jersky,* 377 Ill. 261, this rule has been frequently applied even in cases where the death penalty has been imposed.

The remaining assignments of error are the denial of defendant's motion to tax the costs of the suit, including a reasonable fee for defendant's attorney against the estate, and the entering of the order taxing the costs against defendant individually. There is no statute providing for awarding attorney's fees and taxing them as costs in will contests. The general rule has always prevailed in this State that solicitor's fees could not be taxed as costs in chancery suits without statutory authority. (*Metropolitan Life Ins. Co.* v. *Kingsley,* 269 Ill. 529.) The taxing of costs in chancery cases where, as in this case, there has been a trial of the cause, is committed to the discretion of the trial court, (Ill. Rev. Stat. 1949, chap. 33, par. 18,)

and such discretion will not be reviewed except for an abuse thereof. (*Fleming* v. *Dillon,* 370 Ill. 325.) The order of the court in this case taxing the costs against defendant individually is in harmony with the holdings of this court in *Dowie* v. *Sutton,* 227 Ill. 183; *Leonard* v. *Burtle,* 226 Ill. 422, *Moyer* v. *Swygart,* 125 Ill. 262, and should not be disturbed.

We find no reversible error in the record in this case, and the verdict of the jury and the decree of the circuit court are amply supported by the evidence. The decree of the circuit court of Iroquois County is, therefore, affirmed.

*Decree affirmed.*