GEORGE A. KIMBER, Appellee, *vs.* MARIE ELIZABETH KIMBER *et al.*—(THE HOME BANK AND TRUST COMPANY *et al.* Appellants.)

*Opinion filed June 18, 1925.*

1. PRACTICE—*Supreme Court will not take judicial notice of rules of practice in superior court.* The Supreme Court cannot take judicial notice of the rules of practice of the superior court of Cook county, and the procedure by which a case reaches its place on the trial calendar, not being included in the issues presented by the pleadings, is not a part of the proceedings in the course of the trial.

2. SAME—*motions in trial of will contest must be incorporated in bill of exceptions.* All written motions made in a chancery suit are parts of the record without being preserved or incorporated in the certificate of evidence, but where the statute requires a question of fact to be submitted to a jury, as in a will contest, the trial of the issue so submitted is governed by the same rules as the trial of an issue at law, and motions made in such cause, to become a part of the record, must be incorporated in a bill of exceptions signed by the judge.

3. SAME—*motion for continuance must be incorporated in bill of exceptions.* A motion for a continuance in a suit at law must be brought up by a bill of exceptions or it will not be reviewed; and the same rule applies to affidavits and papers upon which the motion is based.

4. WILLS—*when denial of motion for continuance cannot be reviewed.* The denial of a motion for a continuance in a suit to contest a will cannot be reviewed where the ruling on the motion and exceptions thereto are not incorporated in a bill of exceptions

at the term the ruling was made, and where no extension of time is obtained for that purpose the question is not preserved in a general bill of exceptions made and signed at a subsequent term, after the conclusion of the trial.

5. SAME—*when papers written by testatrix prior to execution of a will are not admissible.* In a suit to contest a will upon the ground of mental incapacity, a letter and statement written by the testatrix long prior to the execution of the will are not admissible in evidence.

6. SAME—*when testimony of devisees called by the contestants should not be stricken.* Where certain devisees who have no interests as heirs of the testatrix testify for the contestants in a will contest their testimony is against their interests, and it should not be stricken on motion of other devisees who are seeking to sustain the will.

7. SAME—*admission of documents in rebuttal for proponents rests in discretion of court.* While it is proper for the trial court to admit, on rebuttal in a will contest, documents which are competent and which the proponents could not introduce with their evidence in chief, yet their admission or exclusion is a matter largely within the court's discretion, and excluding such documents is not an abuse of discretion where they were executed more than a year prior to the execution of the will.

8. SAME—*general rule as to when prior will is admissible.* A prior will of the testatrix is not admissible to show that she was of sound mind and memory at the time of the execution of the contested will unless the provisions of the two are in substantial conformity and the former will was executed when the testatrix is conceded to have been of sound mind and memory.

9. SAME—*when the court may exclude testimony of witnesses in rebuttal for the proponents.* In a proceeding to contest a will the proponents must offer in chief not only the evidence making a *prima facie* case but all other evidence relating to the issue of testamentary capacity, and where the testimony of witnesses offered in rebuttal for the proponents is merely corroborative of their case in chief the court does not abuse its discretion in sustaining an objection to the offered testimony.

10. SAME—*when issue of undue influence may be submitted to jury.* In a will contest on the grounds of mental incapacity and undue influence, where there is evidence in the record which might justify the inference that the execution of the will was procured by undue influence that issue is properly submitted to the jury.

II. SAME—*will may be set aside for mental incapacity although evidence does not sustain charge of undue influence.* Where a will is contested on the grounds of mental incapacity and undue influence, a decree setting aside the will in accordance with the jury's verdict will not be reversed where there is evidence to support the finding of mental incapacity, even though the evidence does not sustain the charge of undue influence.

APPEAL from the Superior Court of Cook county; the Hon. TIMOTHY D. HURLEY, Judge, presiding.

CHENEY & PETERSON, (DAVID G. ROBERTSON, of counsel,) for appellants.

WYMAN, HOPKINS, McKEEVER & COLBERT, (VINCENT D. WYMAN, CHARLES E. CARPENTER, and AUSTIN L. WYMAN, of counsel,) for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Sarah A. Clarke, a widow seventy years of age, died at Chicago on January 25, 1922. She had been married three times. George A. Kimber, a son by her first marriage, was her only child and heir-at-law. On December 14, 1921, while temporarily residing at the home of Thomas G. Perkins and Nellie Perkins, his wife, in Chicago, she executed an instrument which purported to be her last will and testament. By this instrument she gave to her son a lot in Rosehill Cemetery; to Alfred C. Clarke, the brother of her deceased husband, a vacant half-lot in Forest Home Cemetery; to Marie E. Kimber, the wife of her son, George, one dollar; to Ruth Kimber, her grand-daughter, one dollar; to Thomas G. Perkins, her mandolin and $3000; to Nellie Perkins, the wife of Thomas, her cedar chest with its contents and $1000; to Clara Povett, her packing-case with its contents and $1000; to Fannie Bashan, $500; to Jack Ward, the son of Florence and Ernest Ward, $500; to

Mrs. Richardson, $1000; and to the Home Bank and Trust Company and J. Henry Krause, as trustees, $23,000 for the following purposes: (1) To pay to her son, George A. Kimber, during his life, the net income from $20,000; (2) to pay to her grandson, John E. Kimber, when thirty years of age, $3000, with its accumulations; and (3) to divide upon the death of her son the same $20,000, and in case her grandson should not attain the age of thirty years, the sum of $3000, with its accumulations, equally between John Morris, her brother, Jane Morris, the widow of her deceased brother, David, and Lydia Field and Martha Field, her sisters, all of Birmingham, England, and Thomas A. Morris, her brother, of Chicago. The instrument authorized the trustees to make investments and re-investments in their discretion, and to manage, sell, convey, lease or encumber the trust estate, or any part thereof, the same as the testatrix might do if living. It gave the residue of the estate to the brother, sisters and sister-in-law before mentioned, in equal parts. J. Henry Krause and the Home Bank and Trust Company were nominated executors, surety upon the bond of the individual executor was waived, and the executors were empowered to sell, encumber or otherwise dispose of the estate. The instrument was admitted to record as the last will and testament of Sarah A. Clarke, deceased, by the probate court of Cook county on April 18, 1922. Thereafter George A. Kimber, the son, filed his bill of complaint in the superior court of Cook county to set aside the alleged will upon the grounds of undue influence and the want of testamentary capacity. The cause was submitted to a jury, which returned a verdict that the instrument was not the will of Sarah A. Clarke. Answers to special interrogatories were also asked, and the jury found that Sarah A. Clarke was not of sound mind and memory at the time she executed the instrument and that its execution was procured by undue influence. A decree was entered in accordance with the verdict. From that decree the Home

Bank and Trust Company and J. Henry Krause, as execu-
tors and trustees, prosecute this appeal.

The first contention of appellants is that the clerk, with-
out an order of the trial court, erroneously placed the cause
on the chancery trial calendar and that the court erred in
denying appellants' motion for a continuance. On Febru-
ary 7, 1924, counsel for appellants made a motion to con-
tinue the cause on the ground that it had been improperly
placed on the trial calendar. The motion was overruled, an
exception was taken, and the trial began on the same day.
Rule 5 of the superior court of Cook county provides that
"when any chancery case is at issue, upon notice and mo-
tion of either party, the case may be ordered placed on the
trial calendar of the chancellor to whom said case has been
assigned, and such cases be called for trial in the order in
which they are placed on said calendar, unless otherwise
ordered." From affidavits made in support of the motion
for a continuance it appears that on September 14, 1923,
one of appellants' counsel was notified by counsel for ap-
pellee that on September 17 he would move, before Hon.
Denis E. Sullivan, judge of the superior court, that the
cause be placed on the trial calendar; that the attorney so
notified failed to appear at the time fixed but afterwards
ascertained that the only order the court had entered on that
day was one appointing a guardian *ad litem* for certain de-
fendants; that thereafter, pursuant to the request of some
person representing appellee, the clerk placed the cause on
the chancery trial calendar without notice to opposing coun-
sel, and that the first notice appellants' counsel had of what
had been done was a short time before the cause was reached
on the call, when it was too late to procure the attendance
or depositions of material witnesses then in California. Ap-
pellee replies that the question has not been properly pre-
served for review; that to enable this court to pass upon
the question a bill of exceptions preserving it should have
been filed at the term at which the ruling upon the motion

for a continuance was made, and that the preservation of the question in a general bill of exceptions made at a subsequent term, after the conclusion of the trial, is of no avail.

The procedure by which a case reaches its place on the trial calendar is not included in the issues presented by the pleadings and hence is not a part of the proceedings in the course of the trial. This court cannot take judicial notice of the rules of practice of the superior court. (*Anderson v. McCormick,* 129 Ill. 308; *Sixby* v. *Chicago City Railway Co.* 260 id. 478.) All written motions made in a chancery suit are parts of the record without being preserved or incorporated in the certificate of evidence, (*Young* v. *Jameson,* 307 Ill. 71,) but where the statute requires a question of fact to be submitted to a jury the practice in an action at law applies, and the trial of an issue so submitted on the contest of a will is governed by the same rules as the trial of an issue at law before a jury. (*Mayville* v. *French,* 246 Ill. 434; *Johnson* v. *Farrell,* 215 id. 542; *Tucker* v. *Cole,* 169 id. 150.) At law, motions made in a cause, to become a part of the record, must be incorporated in a bill of exceptions signed by the judge. (*Ferris* v. *McClure,* 40 Ill. 99; *Young* v. *Jameson, supra.*) A motion for a continuance in a suit at law must be brought up by a bill of exceptions or it will not be reviewed; and the same rule applies to the affidavits and papers upon which the motion is based. (3 Ency. of Pl. & Pr. p. 394, note 2, and p. 396; see, also, *Bartling* v. *Thielman,* 183 Ill. 88.) While the trial in the instant case was had at the February term, it was at the March term that the decree was entered, the appeal allowed and the time for filing the bill of exceptions fixed. On May 19, 1924, at the May term, the bill of exceptions was signed. No time was asked or allowed at the February term for filing a bill of exceptions to preserve for review the ruling on the motion to continue. An exception to that ruling should have been incorporated in a bill of exceptions at the term the ruling was made or an exten-

sion of time for that purpose should have been obtained. Whether the ruling could be appealed from is immaterial. The bill of exceptions should have been taken upon the question in apt time to preserve it for review. (*People* v. *May*, 276 Ill. 332; *Finch & Co.* v. *Zenith Furnace Co.* 245 id. 586; *Village of Franklin Park* v. *Franklin*, 228 id. 591.) On this record we cannot review the action of the trial court in overruling appellants' motion for continuance.

Seventeen witnesses testified in behalf of the proponents of the instrument. It was drawn by the secretary of the appellant bank from directions which the testatrix gave him after she had read the provisions of a prior will. Upon completion of the instrument she reviewed and approved it. Both of the attesting witnesses were bankers. They had assisted her in business transactions and advised her with reference to investments. One of them testified that she knew when her notes would become due and payable and that she gave instructions concerning re-investments. She came to the bank on crutches, accompanied by some person. The secretary and the attesting witnesses believed that the testatrix was of sound mind at the time she executed the instrument. Several witnesses had met her at dinner on Thanksgiving and Christmas days in the year 1921. Some of these witnesses were present at the Thanksgiving gathering, others on Christmas day, and still others on both occasions. They testified that the testatrix took part in the conversation, singing and other entertainment, and that she recited ten or twelve verses of a certain poem, spoke of a trip she had made to Europe in the year 1920, and related other incidents of her life. These witnesses expressed the opinion, based upon their observations of the testatrix, that she was of sound mind. A sister member of the Eastern Star, who had seen her at different times, testified that while she was melancholy about her health, so far as other matters were concerned she appeared to be rational. Of two other acquaintances, one heard the testatrix recite the

verses of the same poem and the other regarded her as a brilliant woman.

On the part of the contestant twenty-one witnesses testified. There was much evidence tending to show that the physical condition of the testatrix had degenerated and her mentality become impaired. A Roentgenologist testified that the X-ray pictures he had taken of the testatrix, which were offered in evidence, showed a general senile atrophy of the bones of the pelvis, the upper third of both femurs and of all the bones in the skull, with a chronic inflammation of the occipital bone and partial destruction of its posterior portion, and that there was an extensive infection of certain of the bones and a pathological fracture. Another physician testified that at the time of the testatrix's death he found that she had a pus infection of the right middle ear cavity, with subsequent pyemia. He enumerated a number of the conditions of infection that existed and gave it as his opinion that the cause of her death was a purulent infection of the blood stream, and that the conditions he found might affect the brain. A third physician corroborated the first with reference to the deformed condition of the pelvis, and added that the testatrix had a rigidity and an ankylosis of the spine; that her bones were brittle for lack of nutrition and that she was helpless at the time he saw her. Still another physician who had treated the testatrix found that she had anæmia, a high degree of arteriosclerosis, some congestion in the upper part of both lungs and a general senile condition. Her vital powers had largely waned, and her condition, physically and mentally, rapidly became worse to the time his treatments ceased, and it was apparent from her speech and actions that her brain was affected. A fifth physician testified that he was unable to complete a history sheet from the information which she gave him; that he had to repeat his questions to her; that there were long delays in answers to simple questions, and that from his observations he believed she was suffering

from senile dementia.  Another physician testified that from
her deformed and emaciated condition he concluded that
she had suffered from osteomalacia, from which pyemia
results, and that pyemia, in his opinion, caused the paralytic
stroke which she had suffered in 1919.  He testified that
he called to see the testatrix on the day the will was drawn
and that she then seemed to be confused and fatigued; that
there were occasions when he visited her that she did not
answer questions, and that it appeared that she had used
narcotics.  He was of the opinion that she was of unsound
mind.  A seventh physician found a degenerated condition
of the tissues, diabetes, nephritis, an enlarged heart, valvular
lesion, a large liver and a large spleen.  When he first saw
the testatrix she weighed about 180 pounds, but later her
body, and especially her bones, rapidly dehydrated, the lat-
ter to the extent that the blood supply had been taken from
them and there was nothing left but shells.  There was a
large soft area on the right side of her skull, which could
be pushed in with the thumb or finger, and toward the close
of his treatments she had a very pronounced paresis.  She
had suffered a stroke of apoplexy, was hard of hearing and
almost blind.  It was his opinion she was mentally unsound.
An expert in mental diseases was asked a hypothetical ques-
tion purporting to embody the essential features of the tes-
timony adduced by appellee, and he gave it as his opinion
that the person described in the question was of unsound
mind.

Among the facts and incidents related by different wit-
nesses constituting the bases upon which they concluded
that the testatrix was of unsound mind are the following:
At times she failed to answer questions; her conversations
were disconnected; she would change from one subject to
another abruptly and often could not carry on a coherent
conversation; she would drum with her hands and sing
in the midst of a conversation with another person; she
mumbled in speaking, was evasive in her answers, talked

to herself, and made unresponsive and illogical replies to questions; she did not readily recognize her friends and acquaintances upon meeting them; she was melancholy; she pretended to see, or thought she saw, animate bodies and inanimate things which had no existence, and inanimate objects appeared to her to be moving or changing from one thing to another; she repeatedly exhibited hallucinations and delusions in sight and hearing and on one occasion chased an imaginary dog from her porch; she believed in spirits and thought the spirits of her former husbands visited her; she objected to the operation of the hot water system in her house because the flow of the water in the pipes caused her to feel that spirits were there; she thought the spirit of one of her deceased husbands was in the bed-room in which he died, and for that reason requested a prospective purchaser of the house not to open the door to that room; she thought the house was haunted; she talked of going to California to learn to dance, stated that she was a good dancer and singer, and on her voyage to Europe attempted to dance on the deck of the ship; on that trip she took no change of underwear and had no night dress with her; she appeared on the street in an unsightly condition and did eccentric things; at luncheon she removed food from her plate and placed it on the tablecloth and often changed her knife and fork from one hand to the other, and at one time, when she had ample food before her, told the attending physician that she did not receive enough to eat. A number of the foregoing facts and incidents were supported by the testimony of different witnesses. They included, in addition to friends and acquaintances, the physicians who attended the testatrix, the nurse at the hospital, a prospective purchaser of a house the testatrix owned, the person who accompanied her to Europe and a business man who called to see her son. Many other eccentricities were related by other witnesses, but it is not necessary to enumerate them.

Appellants insist that the verdict and decree are contrary to the evidence. It is true that some of the acts of the testatrix relied upon to show that she lacked testamentary capacity at the time the instrument in question was signed by her may be the result, merely, as suggested by appellants, of defective vision, impaired hearing and advanced age. Isolated acts and parts of conversations often appear abnormal but when considered in connection with the whole course of conduct or the entire conversation prove to be normal. The acts and utterances of the testatrix shown by this record, however, can scarcely be attributed to the physical infirmities of old age. Among the witnesses who testified concerning them, many were wholly disinterested in the result of the suit. The physicians also, to a large extent, corroborated each other, and their testimony cannot be ignored. The question whether the testatrix was of sound mind and memory was peculiarly one for the jury, and in view of all the evidence we do not feel justified in disturbing their verdict.

It is further contended by appellants that a certain letter, statement and acknowledgment offered by them and excluded should have been admitted in evidence. On the day after the testatrix died a letter and statement written by her and an acknowledgment by her son were found in her vault at the bank. The letter is dated June 26, 1917, and is addressed to "My dear Alfred." It opens with the assertion that it is not written with any ill-feeling but complains of the treatment accorded her and charges that it caused her illness. Reference is made to the statement which was enclosed with the letter and which purports to set forth items of money given by the testatrix to her son, the last of which was on April 8, 1916. The sum of these items is $5096.50. The son's acknowledgment is that on April 8, 1916, the mother paid for him a second mortgage of $1300 and interest on a certain garage. Each of these papers was written long prior to the execution of the con-

tested instrument, and for that reason the trial court did not err in excluding them. (Jones on Evidence,—3d ed.— sec. 136.)

The trial court admitted in evidence a certain hospital record, and it is insisted by appellants that it was incompetent because some of the notations upon it were made by internes and nurses and not by the physician who testified concerning the record at the time it was offered. Such a record is admissible upon the same basis as books of account, and before it can be admitted in evidence all persons who make entries in it are required to testify to their correctness. (*Wright* v. *Upson,* 303 Ill. 120.) We have examined the hospital record as it appears in the transcript of the record of this cause, and find that it contains memoranda relating to the physical condition, the findings from tests made, and a statement of the medical treatment given the patient. Some of the data set forth in the hospital record were included in the testimony of the physicians and the rest related to matters which could not be prejudicial. Appellants have not shown wherein they were prejudiced by the admission of this record, and their contention with respect to it cannot be sustained.

The appellants further contend that the answer of Dr. Krohn, the expert in mental diseases, to the hypothetical question propounded to him should have been stricken because the question was based, in part, upon incompetent testimony. Two legatees, Fanny Bashan, to whom $500 was bequeathed, and Ruth Shaw, a grand-daughter, who was given one dollar by the contested will, testified to acts by and conversations with the testatrix from which they concluded that she was of unsound mind. The hypothetical question propounded to Dr. Krohn included the substance of a part of the testimony of these two witnesses, and he answered stating that the person described in that question was, in his opinion, of unsound mind. Later, counsel for appellants moved to strike out the testimony of these two

legatees. The motion was allowed. Counsel then suggested that the striking out of their testimony would not cure the error of its admission, because the hypothetical question, and the answer thereto, were partially based upon that testimony. Associate counsel then stated that the testimony of Dr. Krohn also would have to be stricken because it rested, in part, on the testimony of the two legatees, but no motion was made to that effect nor was any action taken by the court. Appellee has assigned cross-errors upon the action of the trial court in striking out the testimony of the two legatees, asserting that they were competent to testify because they were called by the contestant as adverse parties. Neither of these two witnesses was an heir of the testatrix or had any direct interest in the event of the suit except to sustain the will. They were called by the contestant, the adverse party, and testified against their interest. They were competent and their testimony should not have been stricken. (Evidence act, sec. 2; *Wetzel* v. *Firebaugh,* 251 Ill. 190.) It follows that the testimony of Dr. Krohn was properly admitted.

A former will purporting to have been drawn by the testatrix, dated May 25, 1920, and certain letters, and statements of investments and of receipts and disbursements, were found in another vault during the course of the trial and appellants sought to introduce them on rebuttal. They were excluded and complaint is made of the trial court's ruling. While it is proper for a trial court to admit, on rebuttal, documents which are competent and which could not be introduced in chief, yet their admission or exclusion is a matter largely within the court's discretion. (*Huffman* v. *Graves,* 245 Ill. 440.) The excluded papers range in date from July 31, 1918, to May 25, 1920. We have examined them as they appear in the record and are convinced that the court did not abuse its discretion in excluding them. Moreover, a prior will of a testatrix is not admissible to show that she was of sound mind and memory at the time

of the execution of a contested will unless the provisions of the two are in substantial conformity and the former will was executed when the testatrix is conceded to have been of sound mind and memory. (*Wright* v. *Upson, supra; Dillman* v. *McDanel,* 222 Ill. 276; *Nieman* v. *Schnitker,* 181 id. 400; *Kaenders* v. *Montague,* 180 id. 300; *Hill* v. *Bahrns,* 158 id. 314.) Neither of these conditions obtained in respect to the former will sought to be introduced in evidence.

Complaint is also made by appellants that the trial court refused to permit Paul Rosenhouse and Nell Rosene to testify in their behalf on rebuttal. The offers made disclose that their testimony concerned the question of the soundness of mind of the testatrix and would have been merely corroborative of appellants' case in chief and not in rebuttal of the evidence of appellee. In a proceeding to contest a will the proponent must offer in chief not only the evidence making a *prima facie* case but also all other evidence relating to the issue of testamentary capacity. (*Donovan* v. *St. Joseph's Home,* 295 Ill. 125.) There was no abuse of the trial court's discretion in sustaining appellee's objection to the offered testimony of these two witnesses.

The issue of undue influence, it is argued by appellants, should have been withdrawn from the jury. There is evidence in this record which might justify the inference that the execution of the will had been procured by undue influence. The issue was therefore properly submitted to the jury. Whether or not the evidence upon that issue was sufficient to justify a verdict setting the will aside it is unnecessary to determine. The finding on the question of mental capacity is decisive of this case. For that reason a reversal of the decree is not required even if the evidence be held insufficient to warrant a decree against the instrument on the ground of undue influence. Where a will is contested on the grounds of mental incapacity and undue influence, a decree setting the will aside in accordance with

the jury's verdict will not be reversed where there is evidence to support the finding of mental incapacity, and a new trial will not be allowed solely because the evidence does not sustain the charge of undue influence. *Bundy* v. *West,* 297 Ill. 238; *Holland* v. *People's Bank,* 303 id. 381.

Appellants finally complain of the giving of the twelfth instruction, which was as follows:

"If the jury believe from the evidence that, although Sarah A. Clarke had sufficient capacity to attend to the ordinary business affairs of life, yet that, with regard to subjects connected with the testamentary disposition and distribution of her property and the natural objects of her bounty she was of unsound mind; and that while laboring under such conditions she made the will in question, and that in making it she was so far influenced or controlled by such unsoundness of mind as to be unable, rationally, to comprehend the nature and effect of the provisions of the will, and was thereby led to make the will, as she did, then the jury must find the will not to be the will of the said Sarah A. Clarke."

The words "and was thereby led to make the will, as she did," it is argued, amount to an assumption that the testatrix was induced to execute the instrument in question. The jury could not, under the instruction, set aside the will without finding the existence of the conditions stated. There was not in the language to which objection is made the assumption of a fact in issue in the case. Moreover, by the instructions requested by appellants and given by the court, the jury were fully informed upon the subjects of the requisite capacity to make a will and the burden of proof. The form and language of the instruction might have been improved, but giving it did not constitute error prejudicial to the appellants.

We find no reversible error in the record, and the decree of the superior court will be affirmed.

*Decree affirmed.*