(No. 19873.—

B. L. RENFROW, Plaintiff in Error, *vs.* HENRY KRAMER *et al.* Defendants in Error.

*Opinion filed October 25, 1930—Rehearing denied Dec. 6, 1930.*

Carey E. Barnes, for plaintiff in error.

Gillespie, Burke & Gillespie, (Hugh J. Dobbs, of counsel,) for defendants in error.

Mr. Justice Stone delivered the opinion of the court:

This cause is here on *certiorari* to review the judgment of the Appellate Court for the Third District affirming the judgment of the circuit court of Sangamon county in favor of defendants in error.

On October 11, 1927, plaintiff in error secured a judgment by confession on a judgment note against defendants in error in the sum of $7281 and costs. On October 22 following, defendants in error moved the court to set aside the judgment and for leave to plead to the merits. This motion was allowed and pleas and affidavit of merits were filed. A trial of the cause was had at the May, 1928, term of court on the declaration and the pleas of *non est factum* and non assumpsit sworn to, and four additional pleas: (1) Want of consideration and notice thereof to plaintiff in error; (2) fraud and circumvention in obtaining the note; (3) fraud, with the allegation, by way of inducement, of want of consideration and notice thereof; (4) fraud

and circumvention in obtaining the instrument and notice thereof. Plaintiff in error claimed to be a *bona fide* holder for value without notice of defenses to the note. Issues were made up on the pleas, replications, rejoinders and sur-rejoinders, together with the affidavit of merits filed by defendants in error.

It appears that at the January, 1928, term of court plaintiff in error moved to strike the affidavits supporting the motion to vacate the judgment. This motion was denied, and plaintiff in error excepted, prayed for and was given a bill of exceptions, which was filed on January 10, 1928. The alleged error of the trial court in opening the judgment and granting leave to plead is assigned as error here. Plaintiff in error at the May, 1928, term, filed a motion to strike defendants in error's affidavit of merits and for judgment. This motion was denied. No bill of exceptions was prayed at that term. Plaintiff in error filed a motion for a new trial, which was not disposed of until the September term, at which term plaintiff in error asked leave to withdraw that motion for the purpose of entering a motion for judgment *non obstante veredicto*. Such leave was granted, and that motion was filed and denied and a motion to set aside the verdict of the jury and for a new trial was re-filed and was also denied. Plaintiff in error excepted and prayed an appeal to the Appellate Court. A bill of exceptions was filed within the time fixed by the court.

In the Appellate Court the defendants in error moved to strike from the files the bill of exceptions filed January 10, 1928, and all that portion of the bill of exceptions filed under leave granted at the September, 1928, term, which purported to set out the proceedings with reference to the motion to strike the affidavit of merits filed and denied at the May, 1928, term and to which order no bill of exceptions was taken at that term. The bill of exceptions filed January 10, 1928, at the January, 1928, term, set out the motion to vacate the judgment and the affidavits in

support thereof but showed no ruling of the court thereon or exceptions taken to such ruling. The clerk included such order and exceptions thereto in the common law record, but they do not appear in the bill of exceptions filed. The Appellate Court struck that bill of exceptions from the files, and likewise struck from the bill of exceptions authorized at the September, 1928, term of the circuit court all reference to the order of that court denying plaintiff in error's motion to strike the affidavit of merits.

The ruling of the court made on the motion to open the judgment and permit pleas to be filed is not a part of the common law record but to be brought to the attention of a court of review must be preserved by a bill of exceptions. (*People* v. *Faulkner,* 248 Ill. 158; *People* v. *Moritz,* 238 id. 494; *Yarber* v. *Chicago and Alton Railway Co.* 235 id. 589.) The Appellate Court therefore did not err in striking the bill of exceptions filed at the January, 1928, term, as there was nothing in such bill of exceptions for the Appellate Court to review. Therefore no question of error on the part of the trial court in opening the judgment and permitting pleas to be filed is before this court.

Nor was it error on the part of the Appellate Court to strike from the bill of exceptions filed that portion relating to the ruling of the court at the May, 1928, term, denying plaintiff in error's motion to strike the affidavit of merits from the files, as no bill of exceptions was filed at the May, 1928, term, and such matters could not be included in the bill of exceptions sought and secured at the September, 1928, term. An affidavit of merits is not a part of the common law record, and rulings thereon can be preserved for review only by proper bill of exceptions, which must be taken at the term at which the rulings excepted to are made or within such time as the court may at that term have granted for that purpose. (*Kimber* v. *Kimber,* 317 Ill. 561; *People* v. *May,* 276 id. 332; *Village of Franklin Park* v. *Franklin,* 228 id. 591.) Therefore the proceedings per-

taining to the motions and rulings thereon, had at the May, 1928, term, regarding the affidavits of merits and their sufficiency, are not before this court.

The Appellate Court sustained the trial court in its order overruling the motion of plaintiff in error for judgment *non obstante veredicto,* and held that as the sufficiency of the affidavit of merits attacked by that motion was not before the court when the motion was heard in the trial court, plaintiff in error did not show basis or reason for allowing the motion. This ruling of the Appellate Court was correct and plaintiff in error does not seriously argue otherwise here.

In this court leave was granted defendants in error to file certified copies of abstracts and briefs of appellant in the Appellate Court. A motion by defendants in error to strike from the abstract filed in this court all matters appearing on page 20 of that abstract which do not appear in the abstract filed in the Appellate Court was taken with the case. It appears from an examination of the abstracts that in the one filed in the Appellate Court the order of the trial court opening the judgment and allowing defendants in error to plead and granting plaintiff in error a bill of exceptions was not included but is incorporated on page 20 of the abstract filed by plaintiff in error here. As we have seen, the Appellate Court struck from the files the bill of exceptions of the January, 1928, term. As no proper bill of exceptions of that term was filed, the matters contained on page 20 of the abstract here filed are not properly before this court, and the motion to strike such portion of the abstract is allowed.

This statement of the condition of the record in the trial and Appellate Courts and here is necessary to a clear presentation of the issues here involved. At the close of all the evidence plaintiff in error made a motion for an instructed verdict, which was denied, and such denial is assigned as error here.

Counsel for plaintiff in error has argued *in extenso* the facts of the case. These, however, have been reviewed by the Appellate Court and are not open here. The only question pertaining to the facts which this court may consider is whether there is any substantial evidence which, taken with all its reasonable intendment and inferences, may be said to fairly support the verdict. (*Illinois-Indiana Fair Ass'n* v. *Phillips,* 328 Ill. 368; *Zgliczynski* v. *Sokol,* 327 id. 219; *Chicago City Railway Co.* v. *Nelson,* 215 id. 436; *Walldren Express Co.* v. *Krug,* 291 id. 472.) Plaintiff in error was not the payee named in the note, and he contends that he is a holder in due course as defined in the Negotiable Instruments act, and that his claim is not subject to the defense of fraud and circumvention or of want of consideration for the note.

The evidence disclosed that defendants in error, the Kramers, an aged couple living near Emden, Illinois, owned 80 acres of land in Macoupin county and something over 170 acres in Missouri. One Dr. Marvel Thomas owned 240 acres in Macoupin county. Edward Rimmerman, a real estate agent in Springfield, showed the Thomas land to the Kramers and sought to bring about a trade between them and Dr. Thomas. In order to do this he called to his assistance C. B. Meredith, an acquaintance of the Kramers in whom the latter had confidence. On September 18, 1926, defendant in error Henry Kramer entered into a contract with Meredith, as agent for Dr. Thomas, in which it was agreed that the Kramers should convey their Missouri land and Macoupin county land, both clear of incumbrance, in exchange for Dr. Thomas' Macoupin county land and to pay a difference of $12,000. Kramer gave his note for $1500 as earnest money, the balance of $10,500 to be paid on completion of the contract. It appears that Dr. Thomas was unwilling to take the Missouri land but asked $18,000 as a difference in value between his land and the Kramer land; that it was agreed that he should convey his 240 acres

to one Ralph Jones, an associate of Rimmerman's in Springfield, and that Jones would procure thereon a loan of $12,000, which was to be assumed by the Kramers. The Kramers were to convey their Macoupin county 80 acres and their Missouri land to Jones, who would make conveyance of the various tracts of land to the Kramers and Dr. Thomas according to the terms of the contract. Rimmerman, Meredith and Jones undertook to borrow $6000 on the Missouri land, thus supplying the difference in cash which Dr. Thomas wanted in the trade, and they would take the Missouri land instead of Dr. Thomas. Meredith, Rimmerman and Jones thereupon represented to the Kramers that as a matter of convenience to the former they would like to have the Kramers make a mortgage on the Missouri land for $6000, and represented to them that as they were trading Missouri land clear they would not be required to pay this $6000. The Kramers agreed to make such a mortgage. The evidence shows they received none of the $6000 and that it was not intended that they should. The Kramers testified that nothing was said to them about signing a judgment note or any other note; that they were told that it would save Jones, the grantee in the deed, a trip to Missouri if the Kramers executed a mortgage, and that they did not know they had signed a note. They also testified that no note was read to them or mentioned, and that while one of the three men purported to read the mortgage to them he read no reference to a note, and that they did not know they had signed a note until so informed by their banker just prior to the entry of the judgment. Other members of their family testified that nothing was said about a note or read from the papers signed and that they did not know their parents had signed a note.

It appears from the evidence of Meredith that he went to plaintiff in error, Renfrow, and told him about the land trade and that the Kramers were trading their lands to Dr. Thomas clear of all incumbrance but that Rimmerman

and Jones needed the $6000 to take the Missouri land and complete the deal; that he asked plaintiff in error if he would loan $6000, secured by a mortgage signed by Kramers, on the Missouri land, and that after investigation of the solvency of the Kramers Renfrow agreed to make the loan, and told Meredith to have his (Renfrow's) attorney, one Henry, draw the note and mortgage, making the same payable to Henry. This was done, and Henry, when the note was signed, endorsed it without recourse and delivered it to Meredith, who took it to Renfrow. Henry received no part of the $6000. It appears that prior to that time the note for $1500 which Kramers had given as earnest money had been by Meredith and Jones either sold or hypothecated to Renfrow, and as it represented part of the $12,000 which the Kramers were to pay in difference for the land, the contract required that on the execution of the mortgage of $12,000 the note should be returned to the Kramers. This was done. The evidence shows that when the $6000 was turned over, Renfrow deducted from the proceeds thereof the sum of $1500 represented by the earnest money note, and also the amount of another note for $1000 which he held against Meredith and Jones, and turned the balance over to them. There is no evidence whatever that the Kramers got any part of this $6000. Although counsel argue that this was accommodation paper, there is no evidence in the record which brings it within the law relating to accommodation paper.

Counsel for Renfrow argues that the return of the $1500 note to the Kramers constituted consideration for the $6000 note. This is a misapprehension. The Kramers assumed a mortgage for the full $12,000 difference they were to pay, and this constituted the consideration for the return of the $1500 note. The $6000 note in no way entered into the contract between the Kramers and Dr. Thomas. From what has been recited of the testimony, it is clear that there is in the record substantial evidence that the note was given en-

tirely without consideration to the Kramers and that Renfrow had knowledge that this was so.

Sections 52 and 56 of the Negotiable Instruments act define a holder in due course. Among other conditions the statute requires that at the time the holder took the paper he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. By section 56 of that act it is provided that where one has actual knowledge of any infirmity in the instrument or defect in the title of the one transferring it, or knowledge of such facts as to render his act in taking the instrument one of bad faith, such person is not a holder in due course. Under the law, though there is direct and positive testimony that the plaintiff is a holder in due course, yet if circumstances are shown in evidence which by their fair and reasonable inferences tend to show bad faith as defined in the Negotiable Instruments act, the question whether the plaintiff is a holder in due course becomes one of fact for determination by the jury. (*Foncannon* v. *Lewis,* 327 Ill. 455.) In this case there is not only evidence of want of consideration and fraud practiced against the Kramers, but there is also evidence of knowledge on the part of Renfrow at least of such want of consideration. Therefore, whether he is a holder in due course as defined in the statute was a question for the jury, and the circuit court did not err in refusing to instruct the jury to return a verdict for the plaintiff.

It is also argued that the court erred in instructing the jury. We have examined the instructions. Fifteen were tendered by the plaintiff in error, of which fourteen were given. The refused instruction was evidently designed as a "catch-all," and it was not error to refuse to give it. Three instructions were given for the defendants in error, and as they presented the law as announced in this opinion they were not erroneous.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*